IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VIRIDITY ENERGY SOLUTIONS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | No. 4:21-cv-419 |
| | § | |
| LONE STAR DEMAND RESPONSE, LLC, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Viridity Energy Solutions, Inc. ("Viridity" or "Plaintiff") files this Original Complaint against Defendant Lone Star Demand Response, LLC ("Lone Star" or "Defendant") (Viridity and Lone Star are, collectively, the "Parties"), and alleges as follows:

**I.   PARTIES**

1.   Viridity is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.

2.   Lone Star is a Texas limited liability company based in Lewisville, Texas.  Upon information and belief, Lone Star's two managing members, Keith Vauquelin and Amy Wong, are Texas citizens with their address listed in Texas Secretary of State filings as 1079 West Round Grove Road, Suite 300-260, Lewisville, Texas 75067—within Denton County.

**II.   JURISDICTION AND VENUE**

3.   Jurisdiction is proper in the Court under 28 U.S.C. § 1332 because there is complete diversity between Viridity, a Delaware company with its principal place of business in

Pennsylvania, and Lone Star, a Texas limited liability company with both of its members being citizens of Texas, and because the amount in controversy exceeds $75,000.

4. Venue is proper in the Sherman Division of the Federal District Court for the Eastern District of Texas under 28 U.S. Code § 1391 because, upon information and belief, (1) Lone Star and its managing members, Keith Vauquelin and Amy Wong, reside in Lewisville, Texas, within the County of Denton, and (2) a substantial part of the events or omissions giving rise to Viridity's claims occurred in Lewisville, Texas, which is within this Court's Sherman Division.

## III. BACKGROUND FACTS

5. This lawsuit involves a simple contract dispute between Viridity and Lone Star, in which Viridity seeks to recover amounts Viridity has already paid on Lone Star's behalf, and for which Lone Star agreed to indemnify Viridity under the Parties' contract.

*ERCOT'S Demand Response Program*

6. The Parties' relationship stems from services they provide in connection with end users' electricity usage within the power grid managed by the Electricity Reliability Council of Texas ("ERCOT").

7. In an effort to preserve reliability, enhance competition, mitigate price spikes, and encourage efficient energy usage on the Texas electrical grid, ERCOT offers Demand Response programs which permit customers to voluntarily participate in Demand Response Services ("DRS") and Emergency Response Services ("ERS") by reducing or modifying their use of electricity in coordination with other market participants, or in response to price signals.

8. In essence, the programs allow participants—such as large industrial or commercial businesses with high energy usage—to earn money by committing to be able to reduce their usage of electricity by a certain capacity during a quarterly period, and then temporarily reducing their use of electricity by that amount during times of peak electrical demand, thereby reducing peak usage, strain on the grid, and price spikes by offsetting increased usage by other consumers of electricity.

9. In order to administer this market in an organized and time-sensitive manner, ERCOT relies on Qualified Scheduling Entities ("QSEs") to register Demand Response program participants, notify them of impending need for DRS or ERS, and instruct them to reduce usage accordingly—with notification often occurring mere minutes before a spike in demand is anticipated.

10. QSEs not only alert Demand Response participants of the need to temporarily curtail usage, but also function as financial intermediaries by collecting payments from ERCOT based on the Megawatts ("MW") of capacity freed up by registered participants during DRS or ERS events, and distributing portions of those payments to registered Demand Response program participants.

11. However, this market is a two-way street: while ERCOT typically pays Demand Response program participants for curtailing their energy usage during times of peak demand, ERCOT can also assess penalties in the form of imbalance and reliability charges against QSEs that fail to consistently curtail their electricity usage to agreed-upon levels during times of peak demand.  In other words, if enough QSE-registered Demand Response market participants *fail to meet their obligations* to reduce electricity usage in response to DRS or ERS events by using more

electricity than planned, ERCOT can charge a debit to under-performing QSEs which are then passed along to non-complying market participants.

12. In this case, Viridity is a QSE that deals directly with ERCOT, while Lone Star is a Demand Response administrator that interfaces between Viridity and Lone Star's portfolio of commercial and industrial electricity end-users to facilitate participation in the Demand Response program.

*The Parties' Agreement*

13. The relationship between Viridity and Lone Star is governed by the Parties' Energy Management Agreement (the "EMA"), effective April 26, 2017, and subsequent amendments thereto. *See* Exhibit 1, attached hereto.

14. Under the EMA, Viridity agreed to provide Lone Star and its portfolio of end users with energy management services, including DRS and ERS, in return for an Energy Management Fee based on the amount of capacity in MWs that Lone Star's portfolio was able to commit to ERCOT's Demand Response program. Exhibit 1, Section 5.1.

15. Pursuant to the EMA, Viridity acts as an intermediary between ERCOT and Lone Star's portfolio of participating end users by providing QSE dispatch services notifying Lone Star's participants of the need to curtail usage for DRS and ERS events. Exhibit 1, Section 3.2.

16. Viridity also collects monthly payments from ERCOT and distributes them to Lone Star based on the peak MW capacity that Lone Star's portfolio of participating end users contribute to DRS and ERS during the prior month (less Viridity's Energy Management Fee). Exhibit 1, Section 5.1.

17. Significantly, under Section 3.4 of the EMA, Lone Star agreed to "defend, indemnify, and hold harmless" Viridity and its affiliates "from and against any and all Claims that

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                                  Page 4

may arise, and any liability, claim, penalty or other damages that may be incurred by [Viridity] as a result of [Lone Star's] failure to cause [end user participants] to respond to a [DRS or ERS event]" and to pay "[a]ny such amounts due and owing as a result of any such failure[…] to [Viridity] upon demand." Exhibit 1, Section 3.4.

18. Section 12.14 of the EMA also provides that either Party can demand a Performance Assurance from the other Party if it "determines in its reasonable discretion that the other Party's creditworthiness or ability to perform under this Agreement has become unsatisfactory due to a material adverse change in the financial conditions of the other Party[,]" with such Performance Assurance consisting of "cash, letter(s) of credit, corporate guarantees, or other security each in form and amount reasonably acceptable to the Requesting Party." Exhibit 1, Section 12.14.

19. Section 12.14 further states that a Party's failure to provide such Performance Assurance within 10 days of receiving written notice of a demand is an event of default under the EMA, entitling the Requesting Party "to exercise any remedies set forth in this Agreement." Exhibit 1, Section 12.14.

20. Additionally, Section 12.9 of the EMA provides that "[n]either Party shall assign this Agreement or any of its rights and obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed." Exhibit 1, Section 12.9.

*Lone Star's Failure to Pay Viridity Amounts Owed Under the EMA*

21. Between February 14 and February 19, 2021, Viridity incurred $4,592,956.75 in combined imbalance and reliability charges from ERCOT due to its DRS capacity falling below its commitments to ERCOT. In other words, Viridity's DRS participants used more electricity

than they were supposed to under their obligations to ERCOT, and ERCOT assessed imbalance and reliability penalties based on the amount of resulting shortfall in electricity capacity.

22. Viridity paid the full amount owed to ERCOT on February 25, 2021.

23. Of the $4,592,956.75 in imbalance charges ERCOT assessed against Viridity, Lone Star was responsible to indemnify Viridity under the Parties' EMA for $3,383,936.97 in penalties attributable to Lone Star's share of the curtailment shortfall for the month of February, 2021.[1] *See* Exhibit 5.

24. In calculating the total amount that Lone Star owes Viridity, Viridity credited Lone Star for its share of positive ERCOT payments in January and February—$269,666.14 and $101,472.56, respectively—which Viridity had collected from ERCOT but had not yet disbursed to Lone Star, thereby reducing Lone Star's outstanding debt for the February imbalance penalties to $3,012,798.26. Exhibit 5.

25. As of March, 2021, Viridity credited Lone Star with an additional $3,720.02 in net credit after cost recovery, reducing the present amount owed to Viridity to $3,009,078.25. Exhibit 5.

26. Under the indemnification provision of the EMA, Lone Star is required to pay Viridity the full $3,009,078.25 amount on demand.

27. The EMA also requires that, upon Viridity's request, Lone Star must provide a Performance Assurance in the form of "cash, letter(s) of credit, corporate guarantees, or other security each in form and amount reasonably acceptable to the Requesting Party." *See* Exhibit 1 at 12.14.

---

[1] The remaining $1,209,019.78 was attributable to other entities for whom Viridity was similarly acting as QSE. Those entities promptly reimbursed Viridity for these amounts.

**PLAINTIFF'S ORIGINAL COMPLAINT**　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

28. In an email dated March 5, 2021, (the "Initial Notice Email"), Viridity's Director of Sales and Account Management, Jerry Winter ("Mr. Winter"), notified Lone Star's President and Founder, Keith M. Vauquelin ("Mr. Vauquelin"), that Lone Star was obligated to indemnify Viridity for Lone Star's share of the ERCOT penalties and also demanded a Performance Assurance, noting that Lone Star was required to provide such Performance Assurance within three days. *See* Exhibit 2.

29. Viridity was particularly concerned with obtaining such a Performance Assurance given that Lone Star had previously breached the EMA by engaging in an "unauthorized asset transfer in breach of the [EMA]" (which represents an independent default under the EMA). Exhibit 2; *see also* Exhibit 1, Section 12.9 ("Neither Party shall assign this Agreement or any of its rights and obligations hereunder without the prior written consent of the other Party[.]").

30. Lone Star has never disputed that it has an obligation to reimburse Viridity for imbalance charges. Nor has it disputed that the EMA requires it to provide Performance Assurance. Nevertheless, Lone Star has failed to pay Viridity the amounts owed, instead employing obvious delay tactics.

31. For instance, in an email dated March 9, 2021, Lone Star's attorney, Clint Zettle ("Mr. Zettle"), argued that Viridity had failed to provide sufficient evidence of the amount that Lone Star owed Viridity for its share of the ERCOT imbalance charges and demanded that Viridity provide the following documentation to Lone Star by 5:00 PM on March 11, 2021: (1) "ERCOT documentation reflecting the $3,300,000 in imbalance charges assessed to [Viridity] in relation to the former Lone Star assets. Also include proof of Viridity's payment of this fine[… and (2)] ERCOT documentation reflecting the RRS/LR offers, awards and settlement prices from 2/1/2021 through 2/28/2021 related to the former Lone Star assets." Exhibit 2.

32. Mr. Zettle concluded his email by asserting that Lone Star "cannot consider Viridity's request" until Viridity provided Lone Star with "proper documentation regardless of Viridity's imposed timelines." Exhibit 2.

33. Viridity has no obligation to provide such information under the EMA. Nevertheless, the following day—after expending considerable effort to accommodate Lone Star's request for additional documentation—Jessica Woelfel ("Ms. Woelfel"), the Vice President and U.S. Legal Counsel of Viridity's parent company, Ormat Technologies, Inc. ("ORMAT"), responded to Mr. Zettle's email by sending him dozens of PDFs and Excel spreadsheets demonstrating the amounts Lone Star owed to Viridity, including several invoices for imbalance charges Viridity Received from ERCOT and a bank account statement evidencing Viridity's payment of all outstanding amounts due to ERCOT on February 25, 2021. Exhibit 2.

34. Despite Viridity's best efforts to provide Lone Star with mutually-satisfactory documentation and detailed explanations demonstrating Lone Star's responsibility to provide Viridity with adequate Performance Assurance, Lone Star and its counsel continued to stonewall Viridity for weeks, with Mr. Zettle ultimately demanding a "line-by-line explanation of how the claimed imbalance charges for February 2021 were calculated" in an email dated March 31, 2021. Exhibit 3.

35. Based on this response, it became clear that Lone Star was asking for the same thing in different form over and over to avoid its contractual obligations under the EMA. Exhibit 3.

36. Accordingly, Viridity provided a formal notice of default (the "Notice of Default"), dated April 5, 2021, which reiterated Viridity's demand that Lone Star pay all overdue imbalance charges and further reiterated Lone Star's obligation to provide adequate Performance Assurance within three days, as required by Section 12.14 of the EMA. Exhibits 3, 4.

37. To date, Lone Star has refused to pay any outstanding amounts of imbalance charges owed to Viridity under the EMA and has likewise refused to provide Viridity with adequate Performance Assurance of Lone Star's ability to pay its debts.

### IV. CAUSES OF ACTION

#### Count 1 – Breach of Contract

38. Viridity realleges and incorporates by reference all preceding factual allegations as if specifically restated herein.

39. The EMA is a valid and enforceable written contract.

40. Viridity has fully performed under the EMA by providing Lone Star with all energy management services required therein.

41. Lone Star has breached the EMA by failing to defend, indemnify, and hold Viridity harmless for any liability, claim, penalty, or other damages incurred by Viridity as a result of Lone Star's failure to perform under Section 3.4 of the EMA.

42. Lone Star also has breached the EMA by failing to provide a Performance Assurance of its ability to indemnify Viridity within 10 days of Viridity's written request, as required by Section 12.14.

43. Each of these breaches is an independent basis for Lone Star's default under the EMA.

44. Lone Star's breaches have caused Viridity to sustain actual damages for which it now sues.

#### Count 2 – Declaratory Judgment

45. Viridity realleges and incorporates by reference all preceding factual allegations as if specifically restated herein.

46. Viridity requests a declaratory judgment from this Court confirming the following:

    i. Under Section 3.4 of the EMA, Lone Star is required to defend, indemnify, and hold Viridity harmless for any liability, claim, penalty, or other damages incurred by Viridity as a result of Lone Star's failure to perform, and to pay such amounts to Viridity upon demand.

    ii. Lone Star is therefore required to pay Viridity $3,009,078.25 in outstanding imbalance charges assessed against Viridity by ERCOT under Section 3.4 of the EMA.

    iii. Lone Star is independently required to provide Viridity with a Performance Assurance under Section 12.14 of the EMA, in a form acceptable to Viridity and in an amount equal to or greater than $3,009,078.25.

    iv. Viridity was and remains entitled to withhold any and all payments to Lone Star until such time as Lone Star pays Viridity all amounts to which Viridity is entitled under the EMA.

47. Viridity hereby sues for all such relief requested.

## V. CONCLUSION AND PRAYER

WHEREFORE, Viridity asks that the Court issue citation for Lone Star to appear and answer, and that the Court find that Viridity have and recover from Lone Star all actual damages, declarations, remedies, costs of court, attorneys' fees, and any further relief, in law or in equity, to which Viridity may be justly entitled.

Respectfully submitted,

*/s/ Benjamin L. Mesches*
Benjamin L. Mesches
Texas State Bar No. 24032737
Ben.Mesches@haynesboone.com
Leslie C. Thorne
Texas State Bar No. 24046974
Leslie.Thorne@haynesboone.com
Wes Dutton
Texas State Bar No. 24109823
Wes.Dutton@haynesboone.com

Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
214-651-5000 (telephone)
214-200-0463 (facsimile)

**COUNSEL FOR PLAINTIFF VIRIDITY ENERGY SOLUTIONS, INC.**