UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VIRIDITY ENERGY SOLUTIONS, INC. | § § § | |
| v. | § § | CIVIL NO. 4:21-CV-419-SDJ |
| LONE STAR DEMAND RESPONSE, LLC | § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Viridity Energy Solutions, Inc.'s Request for Clerk's Entry of Default Judgment Against Defendant Lone Star Demand Response, LLC, (Dkt. #9), and Supplemental Brief in Support of Plaintiff's Request for Clerk's Entry of Default Judgment Against Defendant Lone Star Demand Response, (Dkt. #11). The Court construes Viridity's motion as a motion for the Court to enter default judgment. Lone Star has failed to respond, and the deadline for doing so has passed. Having considered the motion, the supplemental brief, the record, and the applicable law, the Court concludes that the motion should be granted.

### I. BACKGROUND

Viridity filed its complaint on June 2, 2021. Lone Star was served on July 6, 2021. (Dkt. #4-1). According to Viridity, the parties agreed that Lone Star would file an answer by September 1, 2021, so the parties could pursue mediation. (Dkt. #4 ¶ 4). To date, Lone Star has not filed an answer or otherwise made an appearance in this case. On September 9, 2021, upon Viridity's request, the Clerk entered a default against Lone Star pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. #7).

1

Because Lone Star has failed to respond to Viridity's complaint and default-judgment motion or to otherwise appear in this case, the Court accepts the following allegations as true. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citing, among others, *Ohio Cent. R.R. Co. v. Cent. Tr. Co.*, 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561 (1890))); *see also* L.R. CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

Viridity is a Delaware corporation with its principal place of business in Pennsylvania. (Dkt. #1 ¶ 1). Lone Star is a limited liability company, and both of its members are citizens of Texas. (Dkt. #1 ¶¶ 2–3). Thus, complete diversity of citizenship exists between the parties. Further, the amount in controversy exceeds $75,000. Therefore, the Court has jurisdiction over the subject matter of this lawsuit.[1] 28 U.S.C. § 1332.

The Electricity Reliability Council of Texas ("ERCOT") offers Demand Response programs that permit customers to voluntarily participate in Demand Response Services and Emergency Response Services by reducing or modifying their use of electricity. Participants earn money by committing to reducing their energy

---

[1] Because Lone Star has not appeared in this case, it has waived the right to contest personal jurisdiction and venue. Regardless, the Court concludes that the allegations adequately set forth that the Court has personal jurisdiction over Lone Star and that venue is proper in this Court. *See* (Dkt. #1 ¶¶ 2, 4).

usage by a certain capacity during a quarterly period and then temporarily reducing their electricity use during times of peak demand. To administer the program, ERCOT relies on Qualified Scheduling Entities. These entities notify program participants when they need to temporarily curtail their energy usage. If program participants fail to curtail their energy usage as promised, ERCOT can assess penalties against Qualified Scheduling Entities.

Viridity is a Qualified Scheduling Entity, and Lone Star is a Demand Response administrator that interfaces between Viridity and Lone Star's portfolio of electricity end users to facilitate participation in the Demand Response program. Since 2017, Viridity and Lone Star's relationship has been governed by an Energy Management Agreement ("EMA"). Pursuant to the EMA, Viridity agreed to provide Lone Star and its portfolio of end users with energy management services in exchange for an Energy Management Fee. The fee was based on the amount of capacity that Lone Star's portfolio could commit to ERCOT's Demand Response program.

Under the EMA, Lone Star agreed to indemnify Viridity if Lone Star did not cause its portfolio of end users to respond to a notification to curtail their energy usage and to pay any amounts "due and owing as a result of any such failure . . . to [Viridity] upon demand." (Dkt. #1-1 at 7). The EMA also provides that either party can demand a Performance Assurance from the other if that party's creditworthiness or ability to perform becomes unsatisfactory. Failure to provide a Performance Assurance within ten days constitutes an event of default, entitling the other party to exercise any remedies under the EMA.

In February 2021, ERCOT charged Viridity $4,592,956.70 due to its program participants using more electricity than they were supposed to use.[2] Lone Star's share of this shortfall was $3,382,948.46.[3] Viridity paid the full amount owed to ERCOT on February 25, 2021. (Dkt. #9-2 at 35, 37). Viridity then reminded Lone Star of its indemnity obligation and requested a Performance Assurance. (Dkt. #1-2 at 4–5, 7). Lone Star did not pay or provide a Performance Assurance, leading Viridity to provide a formal notice of default on April 5, 2021. (Dkt. #1-4).

To date, Lone Star has not paid its share of the ERCOT charges or provided a Performance Assurance. As a result, Viridity filed this lawsuit, asserting a claim for breach of contract and seeking a declaratory judgment. In the complaint, Viridity stated that it was seeking damages in the amount of $3,009,078.25. (Dkt. #1 ¶ 46(ii)). In its supplemental briefing, Viridity clarified that it is seeking $3,008,089.74. (Dkt. #11 at 6).

Due to Lone Star's failure to respond to the lawsuit, which was filed more than one year ago, Viridity moved for entry of a default judgment by the clerk pursuant to Federal Rule of Civil Procedure 55(b)(1). Rule 55(b)(1) provides:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

---

[2] ERCOT's charge fluctuated slightly over time. Ultimately, the charge was $4,321,681.52. *See* (Dkt. #11-1 ¶¶ 22, 24).

[3] Viridity credited Lone Star with certain amounts, reducing the amount Lone Star owes to $3,008,089.74. *See* (Dkt. #11-1 ¶ 30).

"In all other cases, the party must apply to the court for a default judgment."
FED. R. CIV. P. 55(b)(2). The clerk referred Viridity's motion for default judgment to
the Court because the amount originally demanded in the motion was greater than
that set forth in the complaint. *Compare* (Dkt. #1 ¶ 46(ii)), *with* (Dkt. #9 ¶ 16). The
clerk did so in accordance with Rule 54(c), which requires that a default judgment
"not differ in kind from, or exceed in amount, what is demanded in the pleadings."
FED. R. CIV. P. 54(c). Therefore, the Court treats Viridity's motion as being made
pursuant to Rule 55(b)(2).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth certain conditions under which
default may be entered against a party, as well as the procedure to seek the entry of
default judgment. The Fifth Circuit requires a three-step process for securing a
default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).
First, a default occurs when a defendant has failed to plead or otherwise respond to
the complaint within the time required by the Federal Rules of Civil Procedure. FED.
R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Second, an entry of default may
be entered by the clerk when the default is established. FED. R. CIV. P. 55(a); *New
York Life Ins.*, 84 F.3d at 141. Third, after an entry of default, a plaintiff may apply
to the clerk or the court for a default judgment. FED. R. CIV. P. 55(b); *New York Life
Ins.*, 84 F.3d at 141.

Rule 55(b)(2) grants a district court "wide latitude," and the entry of default
judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307,
310 (5th Cir. 1993); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

A defendant, by its default, admits a plaintiff's well pleaded allegations of fact. *Nishimatsu,* 515 F.2d at 1206.

## III. DISCUSSION

In determining whether to enter a default judgment, courts use a three-part analysis: (1) "whether the entry of default judgment is procedurally warranted"; (2) "whether a sufficient basis in the pleadings based on the substantive merits for judgment exists"; and (3) "what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing, among others, *Lindsey*, 161 F.3d at 893). The Court addresses each issue in turn.

### A. Default Judgment is Procedurally Warranted

The Court must first consider whether the entry of default judgment is procedurally warranted. *Lindsey*, 161 F.3d at 893. Relevant factors in making this determination include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

On balance, these factors weigh in favor of granting default judgment against Lone Star. When a defendant defaults, it admits to the plaintiff's well-pleaded allegations of fact, so there are no material issues of fact in dispute here. *Nishimatsu,* 515 F.2d at 1206. Viridity's interests are prejudiced because Lone Star

6

has not answered the complaint or otherwise defended, bringing the adversarial process to a halt. *See United States v. Fincanon*, No. 7:08-CV-61, 2009 WL 301988, at \*2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893). Lone Star was served with process and failed to respond despite having ample notice and sufficient time to do so. The grounds for default are clearly established, and a default judgment is not unusually harsh.

As to the remaining factors, no evidence of mistake or excusable neglect exists. Nor does there appear to be any basis on which the Court would be obligated to set aside the default. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (describing the factors a district court evaluates when considering whether good cause exists to set aside a default, including "whether the default was willful, whether setting it aside would prejudice the adversary, [] whether a meritorious defense is presented," and whether "the defendant acted expeditiously to correct the default" (quotation omitted)). For these reasons, default judgment is procedurally appropriate here.

**B. Sufficient Basis in the Pleadings to Enter Default Judgment**

The Court must next consider whether Viridity's complaint provides a sufficient factual basis to enter default judgment. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment."). In determining whether there is a sufficient basis in the pleadings for judgment, courts in the Fifth Circuit "draw meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must present "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation," but "[d]etailed factual

allegations" are not required.[4] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Applying this standard, the Court now considers the sufficiency of Viridity's

claims.

### i. Breach of contract

To succeed on a breach-of-contract claim, a plaintiff must establish: (1) the

existence of a valid contract; (2) performance by the plaintiff; (3) breach by the

defendant; and (4) damages resulting from the breach. *USAA Tex. Lloyds Co. v.*

*Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). In its complaint, Viridity pleads

facts sufficient to state a claim for breach of the EMA under Texas law. Viridity

attached a copy of the signed, written EMA to the complaint, which shows that a

contract was formed between Viridity and Lone Star. (Dkt. #1-1). As to performance,

Viridity alleges that it provided Lone Star with energy management services and paid

ERCOT as required when Lone Star's and other participants' capacity did not satisfy

the commitment to ERCOT. (Dkt. #1 ¶¶ 21–22, 40). Viridity alleges that Lone Star

breached the EMA by failing to indemnify Viridity for the amount it paid to ERCOT

and by failing to provide a Performance Assurance despite Viridity's request. (Dkt. #1

---

[4] To be clear, this low threshold is less rigorous than the plausibility standard under
Rule 12(b)(6). *Wooten*, 788 F.3d at 498 n.3 (declining to "import Rule 12 standards into the
default-judgment context" because "a default is the product of a defendant's *inaction*" rather
than the invocation of Rule 12's protections).

¶¶ 30, 36–37, 41–42). Viridity adequately alleges that these failures constitute breaches of Sections 3.4 and 12.14 of the EMA. *See* (Dkt. #1 ¶¶ 41–42); (Dkt. #1-1 at 7, 14). Finally, Viridity pleads that damages resulted from Lone Star's breach because Viridity paid ERCOT reliability and imbalance charges, and Lone Star has not paid Viridity the $3,008,089.74 it owes pursuant to the EMA. (Dkt. #1 ¶¶ 26, 37, 44); (Dkt. #1-5); *see also* (Dkt. #11-1 ¶¶ 29–30).

Based on the well-pleaded allegations, Viridity has established each element of its claim for breach of the EMA. Viridity is therefore entitled to default judgment against Lone Star for breach of contract.

### ii. Declaratory judgment

The Declaratory Judgment Act allows courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Viridity seeks a declaratory judgment that: (1) Under the EMA, Lone Star is required to defend, indemnify, and hold Viridity harmless for any liability, claim, penalty, or other damages incurred by Viridity as a result of Lone Star's failure to perform, and to pay such amounts to Viridity upon demand; (2) Under the EMA, Lone Star is required to pay Viridity $3,009,078.25 in outstanding imbalance charges assessed against Viridity by ERCOT; (3) Under the EMA, Lone Star is required to provide Viridity with a Performance Assurance in a form acceptable to Viridity and in an amount equal to or greater than $3,009,078.25; and (4) Viridity was and remains entitled to withhold any and all payments to Lone Star until Lone Star pays Viridity all amounts to which Viridity is entitled under the EMA. (Dkt. #1 ¶ 46).

Because Viridity does not address its declaratory judgment claim or present any argument as to why it is entitled to a default judgment on that claim, the Court will not grant default judgment on the declaratory judgment claim. *See Navigators Ins. Co. v. Thunder Constr. Corp.*, No. 3:19-CV-156, 2021 WL 3475563, at *5 (N.D. Miss. Aug. 6, 2021).

## C. Appropriateness of Relief

Viridity asserts that it is owed damages capable of mathematical calculation and, therefore, that no hearing on damages is necessary. The Court agrees.

In the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. *James*, 6 F.3d at 310. But this general rule does not apply—that is, a hearing is unnecessary—when the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *Id.* Courts in this circuit routinely find that copies of contracts, purchase orders, invoices, and statements of projected costs, together with computations and affidavits, are a sufficient evidentiary basis for a damages award. *See, e.g.*, *Crown Distrib. LLC v. Ice Suppz, LLC*, No. 3:21-CV-1052, 2022 WL 1524119, at *6 (N.D. Tex. May 13, 2022).

Here, the affidavits and attached documentary evidence supply the Court with a sum for damages capable of mathematical calculation: $3,008,089.74. *See* (Dkt. #11-1 ¶¶ 16–25, 27–30). Per the EMA, this amount is due and payable "upon demand." (Dkt. #1-1 at 7). Viridity made demands for imbalance charges attributable to Lone Star and for a Performance Assurance beginning on March 5, 2021. (Dkt. #1-

2 at 7); (Dkt. #1-3 at 2–3); (Dkt. #1-4 at 2–3). Thus, Viridity has proved its entitlement to an award of $3,008,089.74 in actual damages.

Viridity also is entitled to its costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and to an award of postjudgment interest on the default judgment pursuant to 28 U.S.C. § 1961(a). Viridity has not, however, provided any authority showing that it is entitled to prejudgment interest or explaining how such interest should be calculated. Thus, the Court cannot award prejudgment interest. *See Crown Distrib.*, 2022 WL 1524119, at *6.

## IV. CONCLUSION

For the foregoing reasons, Viridity Energy Solutions, Inc.'s Request for Clerk's Entry of Default Judgment Against Defendant Lone Star Demand Response, LLC, (Dkt. #9), is **GRANTED**. The Court will enter its final judgment as to Lone Star by separate order.

**So ORDERED and SIGNED this 12th day of July, 2022.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE